UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KALETTE HALEY, ET AL. | CIVIL ACTION NO. 20-0476 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DESOTO PARISH SCHOOL BOARD, ET AL. | MAGISTRATE JUDGE MCCLUSKY |

**MEMORANDUM RULING**

Before the Court are two cross-motions for summary judgment filed by Plaintiffs, Kalette Haley, Shakisha Handy, and Kemo Wyatt, individually and on behalf of their minor children (collectively "the Plaintiffs"), and Defendants Stephanie Brewer, Toras Hill, and the DeSoto Parish School Board (hereinafter "the Defendants"). The Plaintiffs move for what they have entitled "partial summary judgment" on the issue of the Defendants' liability for violations of free speech, retaliation, and the commission of assault, battery, hazing, and abuse against the Plaintiffs' minor children. See Record Document 45. The Defendants counter by seeking summary judgment against the Plaintiffs on all claims. See Record Document 51. After review of the evidence and information presented, both Motions are **GRANTED IN PART** and **DENIED IN PART** as set forth below.

**BACKGROUND**

The Plaintiffs are three parents whose children were members of the Mansfield High School cheerleading squad in 2019. In July 2019, the team attended summer cheerleading camp hosted by the Universal Cheerleading Association ("UCA") in Lafayette, Louisiana. On July 26, the team was practicing a routine under the supervision of school coaches, Defendant Stephanie Brewer ("Brewer"), Nakia Graham ("Graham"), and members of the UCA coaching staff. The Plaintiffs' children continued to talk during

1

the instruction and, according to the Defendants, were asked by a UCA staff member to quiet down twice. See Record Document 51-4 at 2. Following lunch, the team met with Brewer and Graham to practice the routine again before being evaluated. The Plaintiffs' children again began conversing during the practice. The Plaintiffs contend the children were speaking out against Brewer's "bullying and profanity," however, the Defendants assert the girls were being generally disruptive, not speaking out against bullying. See Record Documents 1 and 51-4.

What occurred next is largely disputed between the parties. The Defendants explain that after Brewer and Graham attempted multiple times to quiet the team, Brewer initiated a "modeling exercise" by placing a small piece of white athletic tape over the mouths of each cheerleader except Plaintiff Handy's child, who was the captain. See Record Document 51-4 at 2. The Plaintiffs describe a far more disturbing scene, detailing that Brewer taped the children's mouths shut to silence their protests against her bullying and cursing. See Record Document 45-1 at 2. The Plaintiffs allege the children couldn't speak or remove the tape nor could they contact their parents. See Record Document 45-1 at 10-11. The so-called "taping incident" lasted no more than 30 minutes according to the affidavit of Plaintiff Haley's child. At some point, the children informed the Plaintiffs of the taping incident with Plaintiff Wyatt's child even texting a picture of herself with tape over her mouth to Plaintiff Wyatt, though it is unclear when the picture was sent and whether it was the same tape used during the taping incident. See Record Document 54-15.

In the months that followed the cheer camp until the beginning of the high school football season, the Plaintiffs believe their children were retaliated against for telling the

Plaintiffs about the taping incident. They allege their children were bullied and cursed at by Brewer and Plaintiff Handy's and Plaintiff Haley's children were ultimately removed from their positions as captain and co-captain after receiving numerous demerits. See Record Document 45-1 at 13. The Plaintiffs point to Brewer's treatment of the children at the jamboree football game against North DeSoto High School during which Brewer yelled at the team to "shet [shut] the fuck-up!!" as an example of how Brewer treated their children. Record Document 1. Ultimately, Plaintiff Handy's and Plaintiff Haley's children left the team altogether. The Plaintiffs' children received counseling because, they proffer, the children suffered from depression, nightmares, and anxiety as result of the taping incident. See Record Document 45-4 at ¶12.

Plaintiff Haley met with Defendant Principal Toras Hill ("Principal Hill") and members of the Defendant DeSoto Parish School Board ("the School Board") multiple times to discuss the taping incident and voice her concerns for her child's safety while she remained on the team. A member of the School Board apologized on behalf of the board for the treatment her child received. Plaintiff Wyatt also met with members of the School Board to discuss the incident at which point he claims he was threatened to be "barred from the school if [Plaintiff Wyatt] pursued claims herein." Record Document 8 at ¶30.

The Plaintiffs filed suit on April 16, 2020, against the School Board, Brewer, and Principal Hill alleging numerous claims and requesting both injunctive and monetary relief. This Court granted in part a motion to dismiss filed by the Defendants and narrowed down the Plaintiffs' initial claims to those which met the plausibility threshold. See Record Document 16. The Plaintiffs, in their instant Motion, seek judgment in their favor for the

following remaining claims: 1) violation of free speech against Defendant Brewer in her individual capacity; 2) retaliation by both Brewer and Principal Hill in their individual capacities, each pursuant to 42 U.S.C. § 1983, and 3) state law torts of assault, battery, hazing, and abuse against Brewer in her individual capacity and the School Board. See Record Document 45-1. They request compensatory and punitive damages for their injuries as well as an injunction enjoining the Defendants from taping the mouths of children shut and from retaliating in any other way against the Plaintiffs and their relatives, agents, associates, assigns, or attorneys. See Record Document 45-1 at 20. The Defendants filed their cross-motion for summary judgment requesting judgment against the Plaintiffs and seeking dismissal of their remaining claims. See Record Document 51-4.

## LAW AND ANALYSIS

### 1. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or nonexistence may affect the outcome of the lawsuit. See Batiste v. Quality Construction & Production LLC, 327 F.Supp.3d. 972, 975 (W.D. La. 2018). A genuine dispute exists if a reasonable jury could find for the nonmoving party. See id.

If the moving party carries its initial burden of informing the court of the basis for its motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact when construing all facts in the light most favorable to the

nonmoving party. See Norwegian Bulk Trans. A/S v. Int'l. Marine Terminals Part., 520 F.3d 409, 412 (5th Cir. 2008). A nonmovant cannot defeat summary judgment with "conclusory allegations and unsubstantiated assertions." Mac v. City of Palestine, 333 F.3d 621, 624 n. 7 (5th Cir. 2003). If the nonmoving party cannot "adduce affirmative evidence" to support an essential element of its claim, summary judgment should be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see also Condrey v. SunTrust Bank of Georgia, 431 F.3d. 191, 197 (5th Cir. 2005). Additionally, the existence of cross-motions for summary judgment does not require a court to grant one motion over the other if the record reflects the existence of one or more genuine issues of material fact. See Begnaud v. Blue Cross & Blue Shield Found., No. 06-1137, 2009 U.S. Dist. LEXIS 32278, at *5 (W.D. La. Apr. 16, 2009) quoting Hindes v. United States, 326 F.2d 150 (5th Cir. 1964), cert. denied, 377 U.S. 908, 84 S. Ct. 1168 (1964).

**2. Analysis**

    a. Free Speech[1]

The Court's analysis of the Plaintiffs' claims that Brewer violated the children's right to free speech is two-fold. First, can the school regulate speech that did not occur on the school's campus? Second, was the children's speech within the purview of the First Amendment's protection, prohibiting regulation by the school?

The First Amendment "prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms." Colson v. Grohman, 174 F.3d 498, 508 (5th Cir. 1999). The United

---

[1] Notably, the Court has already dismissed Plaintiff Handy's free speech claim against Brewer because her child was not subjected to the mouth taping, so it shall proceed by analyzing the merits of Plaintiff Haley and Plaintiff Wyatt's remaining free speech claims against Brewer. See Record Document 16.

States Supreme Court, in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733 (1969), confirmed that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." This right is extended so long as the student expresses her opinions "without materially and substantially interfer[ing] with the requirements of *appropriate discipline in the operation of the school and without colliding with the rights of others*." See id. at 513 (emphasis added). The Fifth Circuit Court of Appeals has explained that whether the speech conducted by the student is protected by the First Amendment can be proven by either a showing that a disruption has occurred or by showing demonstrable factors that would give rise to "*any reasonable forecast* by the school administration of 'substantial and material' disruption". Bell v. Itawamba Cnty. Sch. Bd., 799 F.3d 379, 390 (5th Cir. 2015), citing Shanley v. Ne. Indep. Sch. Dist., Bexar Cnty., Tex., 462 F.2d 960, 974 (5th Cir. 1972) (emphasis added).

What's more, a school official's authority to regulate disruptive student speech can reach beyond the physical parameters of the school itself. The idea that a school can continue to regulate student speech conducted off campus stems from its role *in loco parentis*. Such a doctrine categorizes schools and its administrators as stand-in parents in those instances where the children's actual parents are not present to discipline and guide their children. See Mahanoy Area Sch. Dist. v. B.L., 141 S.Ct. 2038, 2046 (2021). This is largely the case when a student participates in an extracurricular school-sponsored activity during which the student is a representative of the school. See id. at 2054 (Alito, J. concurring).

The Plaintiffs maintain that Brewer violated their children's rights to free speech

when she taped their mouths shut during the practice. They contend their children were participating in protected speech while speaking out against Brewer's bullying, profanity, and hazing when they were silenced. See Record Document 54 at 11. The Defendants, however, point to the statements made by Plaintiff Haley and Plaintiff Wyatt's children who say the cheerleaders were making general complaints while practicing, talking between the routines, and asking why their mouths were being taped, not speaking out against bullying.

According to Plaintiff Haley's child, the cheerleaders made no threats against Brewer, Graham, or any other administrator or student at Mansfield High School when Brewer decided to place tape over the girls' mouths. See Record Document 45-15 at 197:13-17, 19-22, 24-25 and 198:1. She explains that the cheerleaders were "complaining about not eating," "complaining about keeping [their] lunchtime," and "complaining about just being outside, being in that area, and all the other cheerleaders were just looking, watching passing through." Record Document 51-12 at 59:1-13. Plaintiff Wyatt's child states they "talk[ed] about stuff—between [them] trying to get the routines and [them] trying to see why [they] were getting taped." Record Document 51-14 at 128:16, 18-21. Neither child, argues the Defendants, indicated that Brewer was cursing or bullying them before she proceeded to tape their mouths. See Record Document 51-4 at 9.

The Defendants largely argue that because the children were being disruptive during the practice, Defendant Brewer was simply regaining order by taping their mouths shut. See Record Document 51-4 at 9. Brewer claims the tape was used in an exercise to help "model the behavior" and perfect the movements in the routine. Record Document

7

64-14 at 40:5-14 and 63:2-7. The Defendants also aver that the tape did not prevent the children from speaking and that some children were even able to remove the tape from their mouths before placing it back on. See Record Document 51-12 at 86:24-25, 87:1-19. However, the Court turns to the three sworn affidavits of the Plaintiff's children which state:

> **Plaintiff Haley's Child:**
>
> During this cheerleading camp in Lafayette, Louisiana her cheerleading coach, Stephanie Brewer was cursing, bullying them, putting her hands in the face of some of the cheerleaders and they asked Stephanie Brewer to stop bullying them.
> Stephanie Brewer responded to our request to stop the bullying and cursing by saying we were talking to [sic] much and placed a large piece of dingy white tape completely over our mouths and a portion of our face…We were not allowed to take this tape off of our mouth…. Record Document 45-7 at ¶¶ 3,4.
>
> **Plaintiff Handy's Child:**
>
> At the cheerleading camp in Lafayette, Louisiana, Ms. Stephanie Brewer our cheerleading coach, was using profanity, cursing and bullying us…. We asked Stephanie Brewer to stop bullying us and treating us bad, but Stephanie Brewer placed a large piece of white tape over the (12) cheerleaders' mouths except mine…They were not allowed to take this tape off of their mouths. Record Document 45-8 at ¶¶ 3,4.
>
> **Plaintiff Wyatt's Child:**
>
> At the cheerleading camp in Lafayette, Louisiana, our cheerleading coach, Stephanie Brewer was cursing, abusing, and bullying us. We asked Stephanie Brewer to stop this treatment of us. Stephanie Brewer then forced we cheerleaders to wear a large piece of white tape that completely covered our mouths where we had to try and breathe through our nose. Record Document 45-9 at ¶2.

It is clear the sworn statements made by the children in their affidavits are in direct conflict with their sworn deposition testimony. The Court notes that absent any effort to strike the children's affidavits, they may nonetheless be considered as competent summary

judgment evidence. Presently, both parties have submitted evidence of contradictory facts regarding the taping incident. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Caston v. Harris, No. 4:12CV32-A-V, 2013 U.S. Dist. LEXIS 76720, at *3 (N.D. Miss. May 31, 2013), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). Such is the case in the instant situation. The Court believes the children were under the authority of the school and Brewer during the cheerleading camp and finds that there is a genuine dispute as to whether the circumstances surrounding the taping incident present a situation where the children's speech was protected. It will be for the trier of fact to assess such circumstances and the credibility of both the children and Brewer. As a result, summary judgment is **DENIED** as to both parties for the claim of free speech violations against Brewer. The claim will proceed to trial.

b. Retaliation[2]

The First Amendment also prohibits retaliation against an individual for participating in a constitutionally protected activity. To establish a *prima facie* claim for retaliation, a plaintiff must show, "(1) they were engaged in constitutionally protected activity, (2) the defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." O'Neal v. Falcon, 668 F. Supp. 2d 979, 987 (W.D.

---

[2] The Court, in a prior memorandum ruling, stated the finding that "Plaintiffs have shown that Brewer 'haz[ed]…beyond any act of reasonable discipline' and retaliated against the children for reporting the incident to their parents." Record Document 16. Because the Plaintiffs rely on this statement in their instant Motion, the Court would like to clarify that its finding at the Rule 12(b)(6) stage was one of plausibility, not a finding of fact or on the merits of the Plaintiffs' retaliation claim.

Tex. 2009), quoting Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002) (internal quotations omitted). If a plaintiff establishes these three elements, the burden shifts to the defendants to prove they would have taken the same action regardless of the plaintiff's activity.

The Plaintiffs allege retaliation by both Brewer and Principal Hill after their children reported the taping incident. See Record Document 54 at 13.[3] Plaintiff Haley and Plaintiff Handy argue their children received unexplained demerits from Brewer after reporting, which ultimately led to their removal from the captain and co-captain positions. See Record Documents 10-3 at ¶10 and 10-2 at ¶11. The Plaintiffs assert that both children actually left the cheerleading squad altogether because of the retaliatory treatment they received after reporting the taping incident. See Record Documents 10-3 at ¶8 and 10-2 at ¶9. Plaintiff Wyatt states his child was retaliated against before she even left the cheer camp because she took a picture of her mouth taped and sent it to Plaintiff Wyatt. See Record Document 54-18 at ¶10. Plaintiff Wyatt's child claims she had to hold the medical bag and was required to stand on the bus after Brewer yelled at her to get off resulting in the loss of her seat. See id.

As for their arguments against Principal Hill, the Plaintiffs believe that he retaliated against the children by supporting and allowing Brewer to remain in her position as coach and not reporting the taping incident to the police. The specific examples the Plaintiffs offer to show his retaliation are when Plaintiff Handy's child was initially kept off the ballot

---

[3] The Court notes that the Plaintiffs, in both their Amended Complaint and Motion, use the term "hostile environment" to describe the effects Brewer's alleged bullying and cursing had on the cheerleading squad after the children reported the taping incident. The Court takes this to simply be a descriptive term rather than an intent to bring a claim of hostile environment against the Defendants.

10

for homecoming court and when Plaintiff Haley's child was required to move her car after she parked "in the back" where she was previously allowed to park. See Record Documents 54 at 15, 54-7 at 66:16-19, and 54-6 at 134:8-21.[4]

The Defendants argue that the children were not engaged in a protected activity because they reported the taping incident privately to their parents and the school administrators. The Defendants contend that in order for their speech to be protected, it must involve a matter of public concern. See Record Document 51-4 at 10-11. They further argue that the Plaintiffs have failed to meet their burden as to the second and third elements of their retaliation claim because the punishment or treatment exacted by Brewer and Principal Hill would not chill a person of ordinary firmness nor were they substantially motivated against the children's exercise of protected conduct. See id. at 12-14.

While the Defendants are correct in stating that, ordinarily, an individual must show they engaged in speech on a matter of public concern to proceed with their retaliation claim, multiple courts have decided to suspend that condition in the context of student speech in school. See Tinker, 393 U.S. 503, 506, 89 S.Ct. 733 (finding the First Amendment rights of students "are not automatically coextensive with the rights of adults in other settings."). "[T]he Supreme Court nor any other federal court of appeals has held [the personal matter/ **public concern**] distinction applicable in **student speech** cases."

---

[4] The Plaintiffs also list "other acts of retaliation" in their Motion including "when both [Brewer and Principal Hill] …refused to properly meet with the parents, to properly protect the cheerleaders," and "when they both refused to report the mouth taping/hazing as required by law…." Record Document 45-1 at 13-14. They believe Principal Hill retaliated by doing nothing about Brewer's alleged cursing and keeping her in the coaching position, nor did he do anything to address the comments made by Chris Hill to Plaintiff Wyatt. See id. The Court finds the Plaintiffs have provided no evidence supporting their assertions and they amount to no more than conclusions of law.

11

Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 766 (9th Cir. 2006). Likewise, this Court does not intend to begin applying a new standard and upset the precedent.[5]

However, even if the Plaintiffs' children engaged in protected speech when they reported the taping incident, the Court believes summary judgment for the retaliation claim in favor of the Defendants is proper because the Plaintiffs have failed to show that the actions taken by Brewer and Principal Hill "were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." Keenan, 290 F.3d at 258. As for Brewer's actions, the Plaintiffs' claims regarding the increase of demerits and ultimate removal from the leadership positions are countered by the strong evidence found in the cheerleading team constitution and demerit book discussed during the depositions of Plaintiff Haley's and Plaintiff Handy's children. Both children stated they signed the demerit book upon receiving the demerits and that the reasoning behind the demerits was supported by the rules each cheerleader was bound to follow. See Record Documents 51-8, 51-9, 64-4 at 108:24-25, 109:1-115:15 and 64-5 at 60:4-25, 65:1-8. Plaintiff Wyatt's child reports that she was suddenly "getting the blame" for everything and was required to carry the medical bag. See Record Document 64-6 at 99:20-23, 100:13. However,

---

[5] Plaintiff Wyatt also claims he was retaliated against by Chris Hill, a coach at Mansfield High School, for speaking with school administrators about the taping incident. See Record Document 45-1 at 15. Plaintiff Wyatt says Hill threatened to bar Plaintiff Wyatt from the school and seeing his son play football if he made a complaint. See Record Document 54-20 at ¶5. While the Court declines to apply the "public concern" element to the children's speech, Plaintiff Wyatt, as a public citizen is required to show his speech was a matter of public concern. The Court finds Plaintiff Wyatt's claim fails because his discussions with school faculty are not protected. See Rodger v. Duncanville Ind. Sch. Dist., No. 3-04-CV-0365-D, 2005 U.S. Dist. LEXIS 5705, at *9 (N.D. Tex. April 5, 2005) (finding the parent's report of son's treatment at school occurred in discussions with teachers and administrators and did not involve a matter of public concern.). Thus, summary judgment is awarded to the Defendants for Plaintiff Wyatt's retaliation claim.

there is no evidence indicating that Brewer knew the child reported the taping incident to her father at that time.

The Court characterizes the Plaintiffs' arguments for retaliation by Brewer as merely broad conclusions or theories that any action taken against the children after they reported the taping incident was in retaliation. This is a legal conclusion which does not qualify as competent summary judgment evidence. See Cutting v. Underwater Techs. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 515 (5th Cir. 2012) (stating that conclusions of law cannot be utilized in a motion for summary judgment). Without more, the Court awards summary judgment in favor of the Defendants for the claim for retaliation against Brewer.

As for Principal Hill's actions, it is noted that Plaintiff Wyatt's child experienced no specific negative treatment from Principal Hill, so the Court looks solely to the claims made by Plaintiff Handy and Plaintiff Haley's children. See Record Document 64-6 at 106:8-13. Similar to their claims against Brewer, Plaintiff Haley and Plaintiff Handy present no evidence indicating that Principal Hill's conduct was motivated by their children's report of the taping incident. Plaintiff Haley's assertion that Principal Hill required her child to move her car has no factual connection to the reporting, see Record Document 54-6 at 134:8-21, and Plaintiff Handy's claim that her daughter was removed from the homecoming ballot is empty because she admits she had yet to pay her cheerleading bill. Once the bill was paid, her child was placed on the ballot and ultimately elected to the court. See Record Document 64-5 at 66:15-19, 67:11-16. Again, the Court finds that without additional factual support, the Plaintiffs' assertions are no more than

legal conclusions. The Court awards summary judgment to the Defendants for the retaliation claims against Principal Hill.

c. State Tort

The Plaintiffs' final claims against Brewer are for assault and battery, hazing, and general negligence. They base their assault, battery, and negligence claims on Louisiana Civil Code article 2315 which dictates, "[e]very act whatever a man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315.[6] The Plaintiffs also maintain that the School Board is vicariously liable for Brewer's actions against the cheerleaders under state law.

The Defendants argue that Brewer is protected by Louisiana's statutory immunity pursuant to La R.S. §17:439(A) which states,

> [N]o person shall have a cause of action against any school employee based on any statement made or action taken by the school employee provided that the action or statement was within the course and scope of the school employee's duties as defined by the school board in which the school employee is employed and was within the specific guidelines for school employee behavior as established by that school board.

The Defendants contend that Brewer was an employee of the school, acting in the course and scope of her employment as cheerleading coach, and that her actions were within the specific guidelines of employee behavior established by the School Board. See Record Document 51-4 at 19. Furthermore, the Defendants maintain that there is no evidence to support the argument that Brewer falls outside the protection of statutory immunity under the exception which states, "[t]he immunity from liability established by

---

[6] The Plaintiffs also allege general claims of bullying and abuse against Brewer; however, they do not point to any statute or legal ground on which to maintain such claims. The Court interprets these assertions as further support for the Plaintiffs' assault and battery arguments and/or general negligence claims rather than individual, standalone claims.

14

this Section shall not apply to any action or statement by a school employee that was maliciously, willfully, and deliberately intended to cause bodily harm to a student or to harass or intimidate a student." See id. quoting La. R.S. § 17:439(C).

The Plaintiffs admit that Brewer was acting within the course and scope of her employment with the School Board when she taped the children's mouths shut. See Record Document 54 at 18. However, neither the Plaintiffs nor the Defendants address the scope of the statutory immunity or answer the question of whether it applies to intentional torts, negligence, or all tortious conduct. Without more information regarding the application of statutory immunity, the Court cannot make an informed decision on the matter. The Court will **DEFER** its decision on the Plaintiffs' assault, battery, and negligence claims until additional briefing is provided on the topic of the statutory immunity's application. The Plaintiffs have **seven (7) days** from entry of this ruling to file their briefing on the issue. The Defendants will have **seven (7) days** from the filing of the Plaintiffs' brief to respond. No further briefing will be necessary absent an order from the Court.

As for the Plaintiffs' hazing claims, they cite to La R.S. § 17:1801 which states,

> Hazing in any form, or the use of any method of initiation into organizations in any education institution supported wholly or in part by public funds, which is likely to cause bodily danger or physical punishment to any student or other person attending such institution is prohibited.

La R.S. § 17:1801(A). The Plaintiffs point to the testimony of private investigator Kem Jones ("Jones") who they argue defined the taping incident as hazing. See Record Document 64-10. However, the Court disagrees with the Plaintiffs' argument on two grounds. First, the Plaintiffs mischaracterize Jones' testimony in that he never determines the taping incident constituted hazing. Instead, he explains that based on the picture of

15

Plaintiff Wyatt's child with tape over her mouth, the taping "could be an element" that points to hazing. Record document 64:10 at 19:3. Yet, he admitted that he did not know what occurred before or after the taping to be able to say with certainty that hazing had occurred. See Record Document 64-10 at 18:19-25, 19:1-3. Second, the Court believes the statute relied upon by the Plaintiffs is only applicable in situations involving university or "postsecondary education" institutions. The Plaintiffs have not pointed to any case law in which the statute provision was applied to the high school setting, and the Court, after thorough review, has found no such instance. Additionally, the Court notes that the statute can be found under the chapter entitled "State colleges and universities," indicating to the Court its application to only postsecondary institutions. See La. Revised Statute Title 17, Chapter 5, Part 3. Thus, the Court finds summary judgment in favor of the Defendants for the hazing claims against both Brewer and the School Board.[7]

    d. Injunction

The Plaintiffs' final claim seeks a permanent injunction against the Defendants to prevent them from further "committing such acts of taping the mouths of minor children herein (or those so similarly situated)" and enjoining them "from the retaliation of the same for reporting the taping of the mouth, or retaliation in any other way against plaintiffs, their relatives, agents, associates, assigns or attorneys." See Record Document 45-1.

A plaintiff seeking a permanent injunction must satisfy a four-factor test before the court may grant such relief. "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships

---

[7] The Court notes that some of the factual circumstances and allegations underpinning the hazing claim may still be relevant as to the Plaintiffs' assault, battery, and negligence claims.

16

between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006). Usually, the remedy of a permanent injunction is only proper after the conclusion of trial on the merits, however, a court may grant a permanent injunction without trial if "there are no material issues of fact and the issues of law have been correctly resolved." Franciscan All., Inc. v. Becerra, No. 16-cv-00108-O, 2021 U.S. Dist. LEXIS 148391, at *9 (N.D. Tex. Aug. 9, 2021), quoting Calmes v. United States, 926 F.Supp. 582, 591 (N.D. Tex. 1996) (internal quotations omitted). Because there remain genuine disputes of material fact and questions of law outstanding, the Court declines to award the Plaintiffs the permanent injunction request at this time and likewise defers the issue to trial.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Partial Motion for Summary Judgment (Record Document 45) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment (Record Document 51) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** to the Defendants for the following claims: retaliation against Stephanie Brewer and Toras Hill and hazing against Stephani Brewer and the DeSoto Parish School Board.

**IT IS FURTHER ORDERED** that summary judgment is **DENIED** as to both parties for the following claims: free speech violations against Stephanie Brewer and assault, battery, and negligence claims against Stephanie Brewer and the DeSoto Parish School

Board.

**IT IS FURTHER ORDERED** that the Plaintiffs submit additional briefing on the application of statutory immunity to state tort claims within **seven (7) days** from entry of the Court's order. The Defendants will have **seven (7) days** from the filing of the Plaintiffs' brief to respond.

An order consistent with the foregoing memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 27th day of April, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT